IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

DOYCE WILLIAMS GODBEE,        )
                              )
        Plaintiff,             )
                              )
    v.                         )    CV 109-109
                              )
MICHAEL J. ASTRUE, Commissioner of  )
Social Security Administration,    )
                              )
        Defendant.             )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Doyce Williams Godbee ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Based on claims of disability dating back to October 8, 2005, Plaintiff protectively applied for DIB and SSI benefits on January 1, 2006. Tr. ("R"), pp. 104-06, 109-12. The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 63-64, 67-70, 72-75. Plaintiff requested a hearing before an

Administrative Law Judge ("ALJ"), and the ALJ held a hearing on June 26, 2008. R. 22-62, 80. Plaintiff, who was represented by counsel,[1] appeared and testified on her own behalf at the hearing. R. 29-50. The ALJ also heard testimony from a vocational expert ("VE") at the hearing. R. 50-60. On December 3, 2008, the ALJ issued an unfavorable decision. R. 13-19.

Applying the sequential evaluation process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has met the insured status requirements of the Social Security Act through March 31, 2008, and has not engaged in substantial gainful activity since October 8, 2005, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: coronary artery disease (CAD), trigger fingers on both hands, and is status-post right carpal tunnel syndrome (CTS) surgery (20 C.F.R. §§ 404.1521 *et seq.* and 416.921 *et seq.*).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant's coronary artery disease and ischemia limit her to performing light exertional work activities[2] that never require

---

[1] While the Commissioner states in his brief that Plaintiff was represented by a "non-attorney" at the hearing before the ALJ (doc. no. 10, p. 3) (hereinafter "Comm'r.'s Br."), a review of the administrative record reveals that the Appeals Council and the ALJ copied "Jeffrey Bowman, Attorney-at-Law," on its correspondence to Plaintiff. R. 3, 8, 12. Thus, although Plaintiff obtained a new attorney prior to filing this civil action, it appears that Plaintiff was represented by counsel at the hearing before the ALJ.

[2] Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

2

climbing ladders, ropes, or scaffolding. She can individually sit, stand, walk, operate foot controls, push and/or pull for at least six of eight hours each eight-hour workday. She can lift/carry 20 pounds occasionally (up to 2 ½ hours per eight-hour workday) and 10 pounds frequently (up to 5 ½ hours per eight-hour workday). She can climb ramps/stairs for no more than one hour during an eight-hour workday. She should avoid concentrated exposure to cold work environments. The trigger fingers on both hands preclude fingering and handling for more than one hour during an eight-hour workday. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and residual functional capacity ("RFC"), there are jobs that exist in significant numbers in the national economy that the claimant can perform[3] (20 C.F.R. §§ 404.1569, 404.1569a, 416.969, and 416.969a). Accordingly, the claimant has not been under a disability, as defined in the Social Security Act, from October 8, 2005, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 15-19.

When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-3, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision and remand to the Commissioner for further consideration. Specifically, Plaintiff argues that the ALJ erred by (1) failing to properly evaluate her obesity in accordance

---

pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

[3] At the hearing, the VE testified that such jobs would include work as a surveillance system monitor, school bus monitor, and hostess. R. 58.

3

with Social Security Ruling ("SSR") 00-3p, and (2) finding that her shortness of breath was not a severe impairment. (See generally doc. no. 9) (hereinafter "Pl.'s Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses

on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

A. **Assessment of Plaintiff's Obesity**

Plaintiff first contends that the ALJ failed to properly evaluate her obesity in accordance with SSR 00-3p. Specifically, Plaintiff contends that the ALJ erred in failing to find that her obesity was a severe impairment. (Pl.'s Br., p. 8.) Plaintiff also argues that the ALJ failed to consider the effect her obesity, in combination with her other impairments, had on her ability to work. (Id.) Before addressing the merits of Plaintiff's arguments, however, it is necessary to note that, as the Commissioner correctly points out, SSR 00-3p has been superseded by SSR 02-1p. See 67 Fed. Reg. 57,859 (Sept. 12, 2002). Accordingly, the Court will consider Plaintiff's argument under SSR 02-1p, rather than SSR 00-3p.

In evaluating Plaintiff's arguments regarding her obesity, the Court begins by noting that Plaintiff is five feet and four inches tall and, at the time of the hearing before the ALJ, weighed 179 pounds. R. 30. The Court also notes that Plaintiff weighed approximately 30

pounds less before her heart surgery in October 2005, and Plaintiff testified at the hearing that she has gained the additional weight since she quit smoking after her surgery. R. 30, 213, 218, 255, 393-94, 401, 404, 418-20, 445-49. That said, at the time of the hearing, Plaintiff's body mass index ("BMI") was 30.7.[4] According to SSR 02-1p, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40."

Yet high BMI is not always correlated to excess body fat; "it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat. Likewise, someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle." SSR 02-1p. In this case, Plaintiff's BMI would place her in the Level I category.

Notably, the ALJ does not reference Plaintiff's weight or obesity in his opinion. That said, the administrative record contains no specific diagnosis of obesity. Indeed, the only references to this condition that Plaintiff has identified in the record are (1) her testimony at the hearing regarding her height and weight, and (2) the finding in September 2006 by Dr. Sidney J. Morgan, a consultative examiner, that Plaintiff was "at least 40 to 50 pounds above [the] ideal body weight." R. 30, 404. However, a review of the hearing transcript reveals that Plaintiff's testimony at the hearing regarding her height and weight was simply provided

---

[4]BMI is calculated by dividing a person's weight, in kilograms, by the square of a person's height in meters. SSR 02-1p. Plaintiff does not cite, and the Court is unaware of, any calculation of Plaintiff's BMI in the record.

6

as background information and not in relation to any specific problem or physical limitation. Moreover, Dr. Morgan did not diagnose Plaintiff with obesity, nor did he place any limits on her ability to work. In addition, while Plaintiff argues that the ALJ did not adequately consider her obesity, singly or in combination with her other impairments, the Court emphasizes that Plaintiff did not mention obesity as a condition contributing to her physical limitations in her applications for DIB and SSI, her request for reconsideration, or during the hearing before the ALJ.[5] R. 71, 104-12. Nevertheless, Plaintiff now urges the Court to remand the case to the ALJ because the ALJ did not find Plaintiff's obesity to be a severe impairment or consider the effect of her obesity (in combination with her other impairments) on her ability to work.

SSR 02-1p stands for the proposition that because Plaintiff's weight fell within the applicable definition of obesity, her obesity should be considered, among other impairments, because it can cause further degradation of Plaintiff's physical capacity, especially in the presence of certain impairments. See SSR 02-1p. Specifically, SSR 02-1p recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal system." Id. Obesity may be considered a

---

[5] As noted above, although Plaintiff informed the ALJ of her height and weight at the administrative hearing, R. 30, she did not testify that issues with her weight contributed to any kind of physical limitations. Furthermore, Plaintiff's counsel questioned Plaintiff extensively about her health problems, but neither Plaintiff nor her counsel ever mentioned obesity as an issue. R. 36-50. In addition, after the ALJ and Plaintiff's counsel had completed their questioning, the ALJ gave Plaintiff an opportunity to provide any other information that she felt may have been overlooked or not adequately covered. R. 50. However, even at this point, Plaintiff did not mention her obesity or any restrictions related to this condition. Id.

7

"severe" impairment when it limits an individual's physical or mental ability to do basic work activities. Id. Such an assessment of severity is made on an individualized basis instead of through a body mass index guideline or descriptive term such as "morbid" or "extreme." Id. An ALJ should assess the effect that obesity has on exertional, postural, and social functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. Furthermore, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Id.

However, as with the general severity standard, a mere diagnosis of obesity does not equate with a finding of severity. Wind v. Barnhart, 133 F. App'x 684, 690-91 (11th Cir. 2005) (ALJ correctly determined obesity non-severe because it did not "cause further degradation" of the claimant's residual functional capacity). A diagnosis or a mere showing of "a deviation from purely medical standards of bodily perfection or normality" is insufficient; instead, the claimant must show the effect of the impairment on her ability to work. Id. (citing McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). Similarly, Plaintiff's BMI is not determinative. See SSR 02-1p. Rather, the record must contain evidence demonstrating that Plaintiff's obesity, singly or in combination with her other impairments, affected her ability to perform the limited range of light work activities. Id.

Although it might have been better for the ALJ to reference and address Plaintiff's obesity in his opinion, the Eleventh Circuit and other district courts within this Circuit have found that an ALJ did not err in failing to do so in similar circumstances. See James v. Barnhart, 177 F. App'x 875, 877 n.2 (11th Cir. 2006) (*per curiam*) (finding that ALJ did not

8

err in failing to find obesity to be a severe impairment where, during her own testimony at the administrative hearing, the plaintiff did not complain that obesity was a functional impairment); Gary v. Astrue, No. 1:08-CV-411, 2009 WL 3063318, at *2-3 (M.D. Ala. Sept. 22, 2009) (failure to mention obesity or explain conclusion as to whether obesity caused any physical or mental limitations did not provide basis for relief where the claimant identified no evidence in the record to support her position that the condition caused "significant limitations on her ability to work"); Vickers v. Astrue, No. 3:08-CV-78, 2009 WL 722273, at *14 (N.D. Fla. Mar. 18, 2009) (remand for failure to mention obesity was not required where the claimant had not shown how his obesity impacted his ability to work (citations omitted)); Ingram v. Astrue, No. 8:07-CV-1591, 2008 WL 2943287, at *6 (M.D. Fla. July 30, 2008) (noting that even though the claimant's weight was noted repeatedly throughout the record, the ALJ's failure to mention obesity or address it in accordance with SSR 02-1p did not constitute grounds for reversal where the claimant had not identified any evidence suggesting that his RFC was affected by his obesity).[6]

Here, as noted above, Plaintiff did not include obesity as one of her impairments in either of her applications for DIB or SSI or her request for reconsideration. Nor did Plaintiff

---

[6]Courts outside the Eleventh Circuit have also reached similar conclusions under similar circumstances. See Forte v. Barnhart, 377 F.3d 892, 896-97 (8th Cir. 2004) (concluding ALJ did not err by failing to address obesity where although treating doctors noted that the plaintiff was obese and should lose weight, none of them suggested his obesity imposed any additional work-related limitations, and the plaintiff did not testify that his obesity imposed additional restrictions); see also Bowser v. Comm'r of Soc. Sec., 121 F. App'x 231, 236 (9th Cir. 2005) (finding that ALJ did not err in failing to account for effects of obesity where (1) the plaintiff did not allege obesity in her applications for benefits, (2) no physician ever diagnosed her with obesity or suggested any additional work-related restrictions, and (3) the plaintiff did not raise obesity as an issue at her administrative hearing).

testify at the hearing before the ALJ that her obesity impacted her ability to perform work-related functions. Furthermore, Plaintiff has not cited to any entry in the record that demonstrates that she was ever diagnosed her with obesity or that such a condition, either singly or in combination with her other impairments, has imposed additional work-related limitations beyond those found by the ALJ. Indeed, although Dr. Morgan found that Plaintiff was 40 to 50 pounds above the ideal body weight, he did not diagnose her with obesity, much less suggest that this condition affected her ability to work. R. 404. Rather, Dr. Morgan's notes indicate that Plaintiff had full range of motion in her upper and lower extremities, could easily walk on her toes and heels, and was able to bend over and touch the floor. R. 404-05. Furthermore, as pointed out by the Commissioner (see Comm'r.'s Br., p. 12), the records of Plaintiff's physical examinations demonstrate consistently that Plaintiff's heart rate and rhythm were normal and that her chest and lungs were clear. R. 207, 247, 261, 404. Finally, the Court notes that Dr. Harold Sours, a non-examining state agency consultant, whose opinion the ALJ recognized in his decision, R. 17, specifically noted Plaintiff's height and weight in his review of the medical evidence and nevertheless concluded that no other limitations on Plaintiff's RFC other than those delineated by the ALJ were warranted.[7] R. 436-43.

---

[7] The Court also notes that Dr. Marcia Turner, another non-examining state agency consultant, indicated that she was aware of Plaintiff's height and weight, but like Dr. Sours, concluded that no other limitations on Plaintiff's RFC beyond those found by the ALJ were warranted. R. 406-13. It is also worth noting that Plaintiff's weight was 176 pounds at the time Dr. Turner and Dr. Sours reviewed Plaintiff's medical records, R. 408, 437, which was approximately the same weight Plaintiff was at the time of the hearing before the ALJ.

While the ALJ's determination as to whether Plaintiff suffered from the severe impairment of obesity (and whether this condition, in combination with her other impairments, had an effect on her ability to work) ideally would be a part of his written report, the Court does not find error in the ALJ's failure to reference or address a condition in his written report that was not raised either implicitly or explicitly by Plaintiff, especially where Plaintiff has not identified any evidence in the record demonstrating that further limitations on her RFC are warranted because of her obesity. See Broz v. Astrue, No. 307-CV-204, 2008 WL 1995084, at *15 (N.D. Fla. May 5, 2008) ("[B]ecause Plaintiff has not demonstrated that obesity reduced his functional capacity, the ALJ properly declined to consider it as part of his list of Plaintiff's severe impairments."). Accordingly, this argument fails to provide a basis for remand.

**B.    Severity of Plaintiff's Shortness of Breath**

Plaintiff next argues that the ALJ erred in finding that her shortness of breath was not a severe impairment. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) & 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;

11

(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that her problems significantly affect her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process,

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c) & 416.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985), for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

In his opinion, the ALJ noted that while Plaintiff had alleged shortness of breath, when seen by her treating physician in November 2005, Plaintiff denied such symptoms with light activity. R. 15, 246. The ALJ also noted elsewhere in his opinion that at the same appointment, Plaintiff reported walking several blocks a day and being able to climb one to two flights of stairs. R. 17, 246. He also took note of the fact that when seen for a consultative examination in August 2006, Plaintiff's chest was clear, and her heart rate and rhythm were normal. R. 17, 404. Accordingly, the ALJ concluded that Plaintiff's shortness of breath did not result in any functional limitations and therefore did not constitute a severe impairment. R. 15.

In support of her argument that the ALJ erred in finding that her shortness of breath was not a severe impairment, Plaintiff contends that the ALJ ignored certain medical evidence in the record that reflects "worsening breathing problems" (Pl.'s Br., p. 10), specifically identifying a chest x-ray performed in October 2005 that showed "left lower lobe air space disease," as well as a chest x-ray from November 2005 showing elevation of the left hemidiaphragm. (Id. at 10-11); R. 301, 335. Plaintiff also identifies reports in August and September 2006 of shortness of breath during consultative examinations, as well as

13

complaints of fatigue and difficulty getting up from her couch in April 2008. R. 402, 403, 462. Finally, Plaintiff points to her testimony at the June 2008 hearing in which she indicated that she gets out of breath "too easily" and has shortness of breath "all the time." R. 43-44.

With respect to the chest x-rays performed in October and November 2005, the Court notes that, as the ALJ acknowledged in his opinion, during this same period, Plaintiff specifically denied any chest pain or shortness of breath with light activity. R. 17, 246. Plaintiff also indicated that she was able to walk several blocks and climb one to two flights of stairs. R. 17, 246. In other words, Plaintiff's own statements around the same time the chest x-rays were taken undermine her argument that these x-rays demonstrate that her shortness of breath caused any functional limitations. Thus, these x-rays do not establish that the ALJ erred in finding that Plaintiff's shortness of breath did not result in any functional limitations and therefore did not constitute a severe impairment.

As to Plaintiff's reports to doctors and her hearing testimony regarding her shortness of breath, the Court notes that although Plaintiff refers to this information as medical evidence, she is essentially relying on her subjective complaints regarding her shortness of breath to contend that this condition constituted a severe impairment. Accordingly, in determining whether the ALJ properly found that Plaintiff's shortness of breath was not a severe impairment, the Court must determine whether the ALJ properly evaluated these subjective complaints.

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's standard, Plaintiff must show:

(1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. Id. When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

"Credibility determinations are, of course, for the [Commissioner], not the courts." Ryan v. Heckler, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the Commissioner's credibility determination if it is supported by substantial evidence. Fortenberry v. Harris, 612 F.2d 947, 950 (5th Cir. 1980) (*per curiam*).[8] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [his] medical condition as a whole.

Dyer v. Barnhart, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and citations omitted).

Here, the ALJ acknowledged that Plaintiff had demonstrated evidence of an underlying medical condition in finding that Plaintiff had the severe impairment of coronary artery disease. R. 15. He further found that this condition could reasonably be expected to give rise

---

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

15

to "some of [Plaintiff's] alleged symptoms," including shortness of breath. R. 17. However, the ALJ went on to find that Plaintiff's statements "concerning the intensity, persistence, and limiting effects" of these symptoms "were not entirely credible." Id. As noted above, in discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so. Foote, 67 F.3d at 1561-62. The Court finds that the ALJ did so here.

In evaluating Plaintiff's complaints regarding her shortness of breath, as noted above, the ALJ took note of the fact that when she was seen by her treating cardiologist in November 2005, approximately two months after her heart surgery, she denied any chest pain or shortness of breath with light activity. R. 17, 246. The ALJ also noted that during this same appointment, Plaintiff reported walking several blocks a day and being able to climb one to two flights of stairs. R. 17, 246. In addition, during a consultative examination performed in August 2006, tests revealed that Plaintiff's chest was clear, and her heart rate and rhythm were normal. R. 17, 404. Furthermore, the ALJ also found that Plaintiff's self-reported activities of daily living were inconsistent with the limitations she attributed to her shortness of breath. For example, the ALJ cited Plaintiff's testimony at the hearing that she can cook, wash dishes, fold clothes, and that she attends church every Sunday. R. 17, 46-48. Accordingly, the Court finds that the ALJ's decision to discredit Plaintiff's subjective complaints regarding her shortness of breath is supported by substantial evidence.

In sum, the chest x-rays Plaintiff identifies in her brief do not support a finding that her shortness of breath was a severe impairment in light of the fact that, at the time the x-rays were performed, Plaintiff denied shortness of breath with light activity and admitted that she

was able walk several blocks and climb stairs. The Court also notes that Plaintiff has identified no other medical evidence demonstrating that her shortness of breath has resulted in any limitations on her ability to work. Furthermore, while Plaintiff has pointed to various places in the record where she complained of shortness of breath, the ALJ's decision to discredit these complaints is supported by substantial evidence. As the Court has found that the ALJ properly discredited Plaintiff's subjective complaints, and Plaintiff has identified no other medical evidence demonstrating any functional limitations resulting from her shortness of breath that would in turn support a finding of severity, the Court further finds that the ALJ's determination that Plaintiff's shortness of breath was not a severe impairment is also supported by substantial evidence. Therefore, this argument also fails to provide a basis for remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this ___ day of June, 2010, at Augusta, Georgia.

_W. Leon Barfield_
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE